UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JOSHUA LAVAR SCRUGGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:24-CV-81 ACL |
| | ) |
| UNKNOWN PASLEY, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the motion of self-represented Plaintiff Joshua Lavar Scruggs, an inmate at the Northeast Correctional Center, for leave to commence this civil action without payment of the required filing fee. ECF No. 3. Having reviewed the motion and the financial information submitted in support, the Court has determined Plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $22.53. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss this action for failure to state a claim.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In support of the motion for leave to proceed *in forma pauperis*, Plaintiff submitted a copy of his certified inmate account statement. ECF No. 4. A review of Plaintiff's account indicates an average monthly deposit of $112.63 and an average monthly balance of $51.16. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $22.53, which is 20 percent of Plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within

the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

On October 28, 2024, self-represented Plaintiff Joshua Lavar Scruggs filed the instant action on the Court's Prisoner Civil Rights Complaint form pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff is currently incarcerated at the Northeast Correctional Center ("NCC"). He brings his claims against correctional officers Unknown Pasley and Unknown Caldwell in both their official and individual capacities. Both Pasley and Caldwell are alleged to be employed by the Missouri Department of Corrections ("MDOC").

Plaintiff alleges, on November 13, 2023, he asked for protective custody from his cellmate. In response, Defendant Pasley directed Defendant Caldwell to handcuff Plaintiff and his cellmate to a bench. Plaintiff alleges that because they were handcuffed in such close proximity, his cellmate "was able to constantly spit on [him] and talk 'shit' to [him] for hours." Plaintiff asserts a failure to protect claim against both Defendants. Plaintiff further asserts that after the incident he told Defendant Pasley "about the spitting incident" but he "failed to follow up and check on the credibility of [his] complaint."

Plaintiff describes his injuries as "being put in a position to be assaulted by an enemy" and denial of "a blood draw to specifically check for any diseases possibly contracted from his

[cellmate's] spit, landing on [his] shaved head, arms and back." For relief, Plaintiff requests damages in the amount of $500,000.

## Discussion

Having carefully reviewed the complaint, the Court concludes that Plaintiff's claims against Defendants must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### A. Official Capacity Claims

Section 1983 provides that a person who, under color of state law, deprives an individual of his constitutional rights may be held liable for the deprivation. Bringing suit based on § 1983 against a government official (such as a prison correctional officer) in his official capacity is the equivalent of bringing suit against the government entity that employs the official. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (a "plaintiff who sues public employees in their official . . . capacities sues only the public employer").

Plaintiff alleges Defendants Pasley and Caldwell are employed by the MDOC, which is an agency of the State of Missouri. As noted above, Plaintiff's official capacity claims against each Defendant are really claims against their employer. As such, Plaintiff's official capacity claims are actually claims against the State of Missouri. Such claims are barred because "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71; *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (a "State is not a person

under § 1983"); *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) ("a state is not a person for purposes of a claim for money damages under § 1983").

Additionally, the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer immunity on a nonconsenting State from lawsuits brought in federal court by a State's own citizens or the citizens of another State. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). See also *Webb v. City of Maplewood*, 2018 WL 2070564, at *1 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a State waives its immunity to suit in federal court. *Id.* at 65. A State will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987).

Neither exception applies in this case. First, there is no congressional abrogation of Eleventh Amendment immunity. Plaintiff brings this action pursuant to § 1983. The United States Supreme Court has determined that 42 U.S.C. § 1983 does not revoke the States' Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). Second, the State of Missouri has not consented to the suit. Specifically, the State's statutory waiver of immunity does not include the type of claims made by Plaintiff in this case. *See* Mo. Rev. Stat. § 537.600.

Thus, because a state is not a "person" for the purposes of § 1983 and a suit against the state is barred by the Eleventh Amendment, Plaintiff's official capacity claims are subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

### B. Individual Capacity Claims

#### 1. Failure-to-Protect Claims

In order to state a failure-to-protect claim under the Eighth Amendment, a prisoner must allege that "(1) defendants were aware of facts from which they could infer the existence of a substantial risk of serious harm to him, (2) they actually drew the inference, and (3) they failed to take reasonable steps to protect him." *Schofield v. Hopkins*, 491 Fed. Appx. 772, 774 (8th Cir. 2012); *see also Farmer v. Brennan*, 511 U.S. 825, 836-38 (1994). A "plaintiff must show something more than mere inadvertence or negligence." *Branchcomb v. Brewer*, 669 F.2d 1297, 1298 (8th Cir. 1982) (per curiam). "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000).

Deliberate indifference exists if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware and he must also draw the inference." *Taylor v. Dormire*, 2008 WL 5071135, at *1 (W.D. Mo. Nov. 24, 2008) (quoting *Farmer v. Brennan*, 511 U.S. 828, 843 (1970)).

"As prisons are inherently dangerous environments," not every injury suffered by a prisoner at the hands of another inmate, is grounds for constitutional liability. *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (citing *Farmer*, 511 U.S. at 834). "Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). An inmate's injury must be more than *de minimis* to state an Eighth Amendment violation. *Id.* Therefore, a *de minimis* injury cannot form the basis of a failure to protect claim, and plaintiff must show that the harm he suffered from defendants' alleged failure to protect him was objectively serious. *Id. See e.g.*, *Wyatt v. Delaney*, 818 F.2d 21, 22-24 (8th Cir. 1987) (a light, accidental blow to the face that caused two small scratches inside the prisoner's mouth was *de minimis*); *Andrews v. Fuoss*, 417 F.3d 813, 815-18 (8th Cir. 2005) (finding a sheriff's forceful blow to the shoulder that left plaintiff with a sore neck, arm, and shoulder as well as a headache and increased post-traumatic stress symptoms is *de minimis*); *Headrick v. Steph*, No. 4:19-CV-920 ACL, 2019 WL 6050718, at *5 (E.D. Mo. Nov. 15, 2019) (allegations that a plaintiff slipped and fell in a non-handicap shower, was in pain at the time of the fall and received some treatment for skin scrapes, but did not suffer any ongoing pain or injury were *de minimis*).

Here, Plaintiff has not presented sufficient facts to allege that the harm he suffered from Defendants' alleged failure to protect him was objectively serious. The injuries Plaintiff describes – being spat on by another inmate – does not rise above a *de minimis* harm. Courts have routinely concluded that inmates' health and safety is not placed at substantial risk by the potential of another

Case: 2:24-cv-00081-ACL   Doc. #: 6   Filed: 12/20/24   Page: 8 of 10 PageID #: 33

inmate spitting on them. *See Jones v. Salley*, No. 2013 WL 5567321, at *3 (M.D. Fla. Oct. 9, 2013) ("To the extent these correctional officers did not protect Plaintiff from other inmates spitting on him, this allegation, without more, cannot reasonably be perceived as presenting a substantial risk of serious harm."); *Kocher v. Luzerne Cnty. Corr. Facility*, 2011 WL 2470382, at *3 (M.D. Pa. June 20, 2011) (dismissing the plaintiff's failure to protect claim because his "allegation that he was spit on, without more, cannot reasonably be perceived as presenting a substantial risk of harm"); *Kron v. Tanner*, 2010 WL 3199854, at *8 n.31 (E.D. La. May 19, 2010) ("[T]he failure to protect plaintiff from [another inmate spitting on him] did not expose him to a substantial risk of serious harm."); *York v. Jackson*, 2008 WL 2641268, at *3 (E.D. Va. July 2, 2008) (dismissing the plaintiff's failure to protect claim finding that being spat on by another inmate "does not amount to cruel and unusual punishment"). Although Plaintiff complains he should have been tested for any illnesses which could be caused from saliva, he does not assert that he actually got sick from the incident, that the other inmate had any known conditions transmittable from saliva, or (most importantly) that he asked either of the Defendants for medical attention and that they personally denied his requests. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Plaintiff does not allege that either Defendant Pasley or Caldwell were aware that he was being spat on at the time it was occurring. In fact, Defendant alleges he told Pasley about his cellmate's actions "days" "after the incident." *See* ECF No. 1 at 4.

At most, Defendants were simply negligent in placing two handcuffed inmates, who were actively engaged in a dispute, in close proximity to each other. *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (explaining, in a failure-to-protect case, that "deliberate indifference includes something more than negligence . . . it requires proof of a reckless disregard of the known risk"); *see also Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003) (negligence, and even gross

negligence, is insufficient to establish a failure-to-protect claim); *Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002) (explaining that "even gross negligence" is insufficient to establish a failure-to-protect claim). Thus, the Court concludes Plaintiff's failure to protect claims against Defendants Pasley and Calwell are subject to dismissal.

### 2. Failure to Follow Up on Grievance Claim

Plaintiff further asserts that on a later date he told Defendant Pasley "about the spitting incident" but he "failed to follow up and check on the credibility of [his] complaint." This allegation fails to state a claim for which relief can be granted because he has failed to identify a constitutional or federal right that has been violated by Defendants. "In the context of a state prison system, an inmate grievance procedure is not constitutionally required." *Spencer v. Moore*, 638 F.Supp. 315, 316 (E.D. Mo. 1986). *See also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("defendants' failure to process [prison] grievances, without more, is not actionable under section 1983"); *Bostic v. Babich*, 2008 WL 906801 at *7 (E.D. Mo. Apr. 3, 2008) ("A 'grievance procedure does not confer any substantive constitutional right upon prison inmates.'" (citation omitted)); *Walls v. Highsmith*, 2007 WL 4468694 at *2 (E.D. Mo. Dec. 17, 2007) ("[T]he denial of grievances, in and of itself, cannot support a substantive constitutional claim." (citing *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002))).

Thus, in the present case, Plaintiff's claim against Defendant Pasley for failure to investigate the basis for his grievance cannot pass initial review because Plaintiff has no constitutional right to a grievance procedure.

### Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel. ECF No. 2. The motion will be denied as moot because this action is being dismissed without prejudice. *See* 28 U.S.C § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 3] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial filing fee of $22.53 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel [ECF No. 2] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall not issue process or cause process to issue upon the complaint because the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 20th day of December, 2024.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE